Laura J. Pfeiffer, CSBN 261520
**Pfeiffer Law, LLP**
1655 North Main Street, Suite 240
Walnut Creek, CA 94596
Email: laura@wclaw.com
Telephone: (925) 974-1000

Attorney for Defendant Joe Nomura

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Akiko Ida; and Y.I., a minor suing through his mother and legal representative, Akiko Ida;<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Joe Nomura;<br><br>　　　　Defendant. | Case No.: 4:25-cv-03474-KAW<br><br>**DEFENDANT'S ANSWER TO COMPLAINT AND COUNTERCLAIM** |

**COMES NOW,** Defendant JOE NOMURA answers the Complaint by the Plaintiff as follows:

**I.    RESPONSE TO THE CLAIMS IN THE COMPLAINT**

1. Defendant **denies** each and every allegation in the Complaint except those specifically admitted in this Answer.

2. Defendant **admits** all of the allegations in the following paragraphs of the Complaint: 5, 7, 9, 11, 12, 14, 17, 19, 25, 26, 27, 28, 29, 30, 31, 32, 33, 35, 37, 38, 39, 40, 41, 42.

3. Defendant does not know or have enough information to form a belief as to whether the allegations in the following paragraphs are true: 10, 34.

4. Defendant **admits only parts** of each paragraph below and denies or does not know enough to say whether the rest of the paragraph is true.

a. Paragraph 2. Defendant only admits that the Plaintiffs are third-party beneficiaries of two written contracts (by way of two Forms I-864). Defendant denies that he only provides Plaintiffs $900 a month and denies the claim that they cannot survive financially with the support he provides. From October 2024 to April 2025, Defendant stated he provided Plaintiffs over $900 in monthly cash allowance. Plaintiff Akiko has also sent texts to Defendant confirming amounts over $900 in monthly cash allowance. Starting May 2025, Defendant states he intends to provide Plaintiffs $500 in cash allowance every two weeks. In addition to the cash allowance, Defendant pays for Plaintiffs other needs and provides them to Plaintiffs free of charge which can be included in the financial contributions. *See Rimas v. Eugenio,* No. 23-CV-02832-HSG, 2024 WL 1975455 (N.D. Cal. May 1, 2024) (*"Eugenio"*). He pays for insurance and utilities for the Plaintiffs at no cost to them. Defendant does not charge Plaintiffs rent, and he states he has offered to pay for Plaintiffs' food when he goes out grocery shopping. Defendant also states he received Plaintiffs' receipts showing how the cash allowance was utilized, and those totals never exceeded the cash allowance Defendant provided to the Plaintiffs.

b. Paragraph 6. Defendant admits this Court has further subject matter jurisdiction pursuant to 28 U.S.C. Section 1367, but only with regard to claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Defendant denies that "all claims" that may exist between Plaintiffs and Defendant are so related.

c. Paragraph 13. Defendant admits he is a citizen of the United States and married Plaintiff Akiko on January 30, 2023, in Aichi, Japan. Defendant denies that he is Plaintiff Akiko's legal spouse due to entering marriage based on fraud and misrepresentation. Cal. Fam. Code § 2210 (2025). Defendant is currently seeking

PFEIFFER LAW, LLP
ATTORNEYS AT LAW
1655 NORTH MAIN STREET, SUITE 240
WALNUT CREEK, CA 94596

1. an annulment of their marriage in the State Court [25FL121103 – Alameda County, filed May 02, 2025]. He sought an attorney to represent him in the federal court to file an answer by May 15, 2025, but his family law attorneys were only admitted in State Courts. His family law attorneys applied for admittance into the United States District Court, Northern District of California, on May 15, 2025.

   d. Paragraph 15 and 16. Immigrants determined likely to become a public charge may be denied admission in certain, but not all, applications for entry. There are applications for legal permanent resident status that are not subject to the public charge ground of inadmissibility.

   e. Paragraph 20. Defendant admits the Form I-864 is relevant to marriage-based immigrant visa cases but denies Plaintiffs' statement "The Form I-864 is mandatory in marriage-based immigrant visa cases at all times material to this case" as the statement is overly broad.

   f. Paragraph 21. Defendant admits an I-864 can be a legally binding contract. However, whether an I-864 is legally binding depends on the facts, circumstances, and defenses of each individual case.

   g. Paragraph 22. Plaintiffs' language does not reflect the statutory text. The statute provides that "the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." See 8 U.S.C. § 1183a(a)(1)(A).

   h. Paragraph 23. Defendant admits that the poverty guidelines are published annually and are used to calculate potential liability for a valid and enforcement I-864 but not for an invalid and unenforceable I-864.

   i. Paragraph 24. While 8 U.S.C. § 1183a(a)(1)(B) allows a sponsored immigrant to enforce a valid I-864 as a third-party beneficiary, not all I-864s are enforceable, and

the pleading assumes enforceability. Defendant does not admit the relevance of any nonbinding case law such as *In re Marriage of Khan.*

    j.    Paragraph 34. Defendant only admits Plaintiff Akiko has been improving her oral and written English skills and that she was a registered nurse in Japan. When Plaintiff Akiko and Defendant met, Plaintiff Akiko mostly spoke to Defendant in English with some Japanese. Defendant paid $975 for Plaintiff Akiko to attend a six-week English school, which she quit. Plaintiff Akiko told Defendant in December 2024 that she was going to start a job as an assistant cook at a Japanese restaurant, and she had told the owner she would be able to work as many hours as she needed. She also told Defendant that she was studying for an exam so she could become a Registered Nurse. He is aware that she was also going to do Uber Eats which did not depend as much on her English proficiency. She has the required English proficiency to find employment.

## II. AFFIRMATIVE DEFENSES

### A. NO BREACH

5. Defendant acknowledges the requirement set forth by Congress to mandate the Affidavit of Support in immigration cases. Defendant understands that visa petitioners, such as himself, are expected to act as a financial safety net for the new immigrants they sponsor. Defendant states that if the court finds the Affidavit of Support valid, he has a responsibility to provide the equivalent of 125 percent of the Federal Poverty Guidelines.

6. Defendant has made every effort to fulfill the duty as the sponsor under the Affidavit of Support. Defendant has provided the Plaintiffs a monthly cash allowance and pays for the Plaintiffs' health insurance, tuition, supplies, auto-insurance, car payments, cell phone, internet, transportation, and other living costs. He believes these living expenses Defendant has covered for the Plaintiffs constitute as income.

///

### B. FRAUD BY INDUCEMENT

7. Defendant understands that the courts have found that fraudulent inducement is inconsistent with the purpose of the I-865 requirement, but he seeks to preserve this right for appeal. *Dorsaneo v. Dorsaneo*, 261 F. Supp. 3d, 1055 (N.D. Cal. 2017). aff'd, 780 F. App'x 532 (9th Cir. 2019).

8. Were it not for Defendant believing Plaintiff Akiko wanted to be his wife, Defendant would not have filed an I-864 for the Plaintiffs to join him in the United States and become lawful permanent residents. Defendant filed an annulment action believing Plaintiff Akiko only married him for the immigration benefit. Once married, Plaintiff Akiko's behavior has shown she never intended to engage in a marital relationship. They married in a courthouse in Japan with none of their family members present. Defendant has only seen Plaintiff Akiko wear the wedding ring twice – at the store when he purchased it for her and at a dinner with her parents. Plaintiff Akiko and Defendant have not consummated the marriage. She sleeps in a separate bedroom from the Defendant which she installed a lock on to prevent Defendant access to her space. Plaintiff Akiko refuses to go on outings with the Defendant and has made efforts to keep all her property and activities separate from the Defendant. Plaintiff Akiko has asked Defendant for documents to prove they are in a bona fide marriage together, such as 20 pictures with him and a signed letter. Prior to her request, Defendant asserts Plaintiff Akiko took a picture of Defendant and the Plaintiffs at dinner for proof, but he did not know it was for that purpose at the time.

### C. MITIGATION OF DAMAGES

9. While Defendant acknowledges that the immigrant spouse has no duty to seek employment to mitigate damages according to the state court, Plaintiff's argument that she needs financial support beyond the 125 percent of the federal poverty line to live in the Bay Area should not be addressed in the federal court through an I-865 enforcement action. If Plaintiff Akiko requires support beyond the 125 percent of the federal poverty line,

PFEIFFER LAW, LLP
ATTORNEYS AT LAW
1655 NORTH MAIN STREET, SUITE 240
WALNUT CREEK, CA 94596

1. Defendant asserts that such an issue is best suited for the State Court where an annulment and divorce action have been filed. Plaintiff Akiko served Defendant the divorce summons on May 16, 2025, after he filed for annulment [25FL119313 – Alameda County, filed April 18, 2025].

10. Defendant also asserts that Plaintiff Akiko has made efforts to find a job and has been offered a job, but she chose not to take such opportunities. Defendant has also provided Plaintiff Akiko the means to seek employment, but she has chosen not to pursue such opportunities.

### D. UNCLEAN HANDS

11. Defendant believes that Plaintiff Akiko engaged in misconduct which would render enforcement contrary to the principles of fairness. While courts have categorically rejected equitable defenses, Defendant seeks to preserve this right for appeal. *See Belevich v. Thomas,* 17 F.4th 1048 (11th Cir. 2021); *see also Burkhalter v. Burkhalter,* No. EDCV 19-272 JGBSPX, 2020 U.S. Dist. WL 1659263 (C.D. Cal. Feb. 28, 2020) ("traditional contract defenses cannot be used to avoid support obligations"); *see also Cyrousi v. Kashyap,* 386 F. Supp. 3d 1278 (C.D. Cal. 2019) (rejecting defenses of laches, waiver, statute of limitations, failure to mitigate, and unclean hands; no defense counsel appeared). A sponsor's obligation only begins "when the immigration officer or the immigration judge grants the intending immigrant's application for admission or adjustment of status." *See* 8 C.F.R. § 213a.2(e)(1) (2025). The affidavit only becomes enforceable upon the grant of lawful permanent resident status. If Plaintiffs as the intended beneficiaries lied to Defendant and the federal government to obtain lawful permanent resident status, their misconduct triggered the condition of the I-864.

### E. UNCONSCIONABILITY

12. Defendant asserts that enforcing the I-864 in this context would be unconscionable. While courts have categorically rejected equitable defenses, Defendant seeks to preserve this right

PFEIFFER LAW, LLP
ATTORNEYS AT LAW
1655 NORTH MAIN STREET, SUITE 240
WALNUT CREEK, CA 94596

for appeal. *See Belevich, supra*; *see also Burkhalter, supra,* ("traditional contract defenses cannot be used to avoid support obligations"); *see also Cyrousi, supra.* Defendant states that Plaintiff Akiko married him solely for the purposes of the green card and the benefits the I-864 would incur on her. He is now seeking an annulment of the marriage which was induced by fraud. Plaintiffs' treatment of Defendant has left him isolated in his own home. He wanted to build a family with the Plaintiffs. Current provisions in the case law also do not provide a protection of a sponsoring spouse from the abuse of a sponsored immigrant in the I-864 action. *See Belevich, supra*, at 1051; *see also* Veronica Tobar Thronson. Defendant intends to appeal the decision to grant entry to Plaintiffs given their entry was procured by the Plaintiffs fraud.

### III. COUNTERCLAIM

13. Joe Nomura files a Counter Claim against Akiko Ida for fraudulently inducing him to enter into a marriage under the California Civil Code Section 1572.

14. The Court has subject matter jurisdiction over this case through supplemental jurisdiction pursuant to 28 USC Code Section 1367. The district courts shall have supplemental jurisdiction over all claims that are so related to the claims in action with such original jurisdiction that they form part of the same case or controversy. Ms. Ida presented facts relating to her marriage and entry into the United States that are required to qualify her for the I-864 support. Mr. Nomura is further arguing fraud by inducement as a defense to the I-864 obligation. Therefore, the claims are so related that they form part of the same case or controversy.

15. Ms. Ida has waived personal jurisdiction in this matter through filing the I-864 enforcement in the federal court. Further, Ms. Ida also made deliberate contacts with Mr. Nomura while he was in the State of California through her online conversations with the Defendant and conducted actions in furtherance of her fraud once in the United States.

16. Venue is proper if the defendant resides in the judicial district, a judicial district in which

a substantial part of the events or omissions giving rise to the claim occurred, or there is no district in which an action may otherwise be brought, pursuant to 8 U.S.C. Section 1391(b). Under the counterclaim, Ms. Ida would be considered the defendant. Venue is proper in this Court because Ms. Ida has waived personal jurisdiction through her filing of the I-864 enforcement. She further has been residing in Mr. Nomura's home in Oakland, California since arriving in the United States in October 20, 2024. While Ms. Ida and Mr. Nomura both have cases in the state court regarding their marriage, Mr. Nomura is asserting fraud by inducement as a defense to the I-864 obligation.

17. The statute of limitations for a claim of fraudulent concealment is within 3 years after the facts constituting the fraud are discovered. Mr. Nomura began discovering the concealed information after Ms. Ida entered the United States on October 20, 2024 which falls within the 3 years of the facts constituting the fraud. He further asserts that Ms. Ida revealed the concealed information to him on February 4, 2025 when she requested he help her show they were a couple despite beginning talks of divorce.

18. Mr. Nomura entered into a marriage contract with Ms. Ida under the belief that they would be entering into a bona fide marriage. Mr. Nomura recalls Ms. Ida telling him about traveling together, going out to eat, and having a future together. Mr. Nomura expected they would travel and go on outings together, talk and share their plans and dreams, and grow old together.

19. After their marriage in January 2023, Ms. Ida requested that she sleep in a separate room from Mr. Nomura when she first arrived in the United States until she became more comfortable as they hardly knew each other. She told him if they never slept together or consummated the marriage, they would get divorced. Ms. Ida has told Mr. Nomura she is not into public displays of affection, so prior to their marriage they only hugged once and held hands once.

20. Since arriving in the United States, Ms. Ida has slept in a separate bedroom from Mr.

Nomura and has made efforts to separate their belongings and daily activities despite the talks of going on outings and traveling together.

21. On October 21, 2024, Ms. Ida asked Mr. Nomura why he was eating her food. Mr. Nomura was surprised as they bought the food together. Ms. Ida began labeling her food, "Do Not Eat." Mr. Nomura was not allowed to eat food in his fridge purchased with his funds. From that point, if Ms. Ida cooked dinner for him, she only gave him small portions.

22. On October 22, 2024, Ms. Ida told Mr. Nomura she wanted to go home. Even though he sent her pictures of how his home was, she complained about how awful it was. Since they had been engaged in 2019, she had not visited his home in Oakland once before receiving her lawful permanent resident status.

23. In November 2024, Mr. Nomura tried to initiate a sexual relationship with Ms. Ida. She provided excuses against sleeping with him for several weeks until telling him she never wants to have sex with him.

24. In January 2025, Ms. Ida and Mr. Nomura began talking about divorce. On January 27, 2025, she wanted to know if they would divorce before or after October 2026 as it would affect whether she would go home or if she could stay in the US. She called him on January 28, 2025, while he was at work to confirm they will be filing for divorce. On February 2, 2025, they discussed divorce again. Mr. Nomura and Ms. Ida kissed for the first time and hugged for a second time, but only when it looked like they were going to get a divorce.

25. On January 28, 2025, Ms. Ida took a picture of Mr. Nomura, her, and her child Y.I. while they were having dinner together. Mr. Nomura felt like they were the family he always dreamed about as they ate dinner together, all three of them. He also states that Ms. Ida requested she take her time in moving out once they divorced which he agreed to. Mr. Nomura did not realize until after the photo was taken that it was likely gathered for the purposes of proving they had a bona fide marriage.

26. On February 2, 2025, Mr. Nomura and Ms. Ida went to marriage counseling. Mr. Nomura

had requested marriage counseling in mid January but Ms. Ida refused to go at first. Mr. Nomura went to marriage counseling alone in January 2025. Mr. Nomura's marriage counselor told him after that session that she only sees couples together. Mr. Nomura emailed their previous immigration attorney stating he was seeking marriage counseling but Ms. Ida did not want to go. He asked Ms. Ida again to join him which she agreed. Mr. Nomura believes she agreed as she was looking for ways to prove a bona fide marriage. He has not asked for marriage counseling since discovering she was only going to have evidence they were a couple.

27. On February 4, 2025, Ms. Ida requested Mr. Nomura help her. She provided Mr. Nomura screenshots regarding the "Divorce Waiver" for the green card renewal procedure. The screenshots state that Ms. Ida has an overwhelming lack of commonly used evidence (photos, proof of travel, gifts and letters to each other, joint bank account, etc.) but "It is important that you attended marriage counseling." Despite talks of divorce, Ms. Ida was requesting Mr. Nomura help her with photographs and letters for the purposes of maintaining the immigration status after divorce. She also offered to sleep with him if he cooperated by giving proof of a real marriage. Mr. Nomura discovered at this time that Plaintiff Akiko only intended to marry him for the immigration benefits, including the benefits granted by the I-864.

28. Around February 2, 2025 to February 5, 2025, Ms. Ida asked for the car policy or anything that shows both of their names. She also requested they take a month long trip, take more than 20 pictures together, and asked about opening a joint bank account. After February 5, 2025, Ms. Ida stopped asking for evidence.

29. Since their marriage in January 30, 2023, Mr. Nomura has only seen Ms. Ida wear her wedding ring twice.

30. Mr. Nomura seeks damages for all the expenses incurred for his marriage to Ms. Ida prior to her entry into the United States, including immigration attorney fees, the money Mr.

Nomura provided to Ms. Ida monthly prior to her entry into the United States, and other expenses incurred for the purpose of bringing Ms. Ida and Y.I. to the United States.

31. Mr. Nomura requests a jury trial of all issues so triable.

## IV. DEMAND FOR RELIEF

WHEREFORE, Defendant JOE NOMURA prays for judgment as follows:

a. That the Court enter judgment dismissing the complaint;

b. A declaration that Plaintiffs' receipt of financial support under I-864 is also covered by 1) costs of living Plaintiffs have incurred that Defendant pays for without reimbursement and 2) costs Plaintiffs would have incurred had Defendant not provided such resources without seeking reimbursement;

c. An order for parties to use Alternative Dispute Resolution and seek a resolution to mitigate litigation costs;

d. An order of judgment in favor of Defendant against Plaintiff Akiko on his claim for relief; and

e. That the Defendant be awarded such other and further relief as the Court may deem proper.

Respectfully submitted,

DATED: May 28, 2025                           PFEIFFER LAW, LLP.

                                              _____
                                              Laura J. Pfeiffer

# VERIFICATION

I, Joe Nomura, declare as follows:

1. I am the Defendant in this case.
2. I am a citizen of the United States.
3. I verify the forgoing Answer and Counterclaim and know its contents and was duly prepared under my direction; that the facts stated therein have been assembled by me; and that the allegations therein are true and correct to the best of my knowledge, information and belief.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on May 28, 2025, at Oakland, California.

*Joe Nomura*
Joe Nomura
Defendant

Page 1 of 1